## S. W. Ward et al. v. City of Murphysboro et al.

1. FIRE LIMITS—*Ordinances—Requiring Notice.*—Under an ordinance requiring notice, before a city, or any one representing it, can legally remove a building in process of erection, within the fire limits, it must give to the owner notice to remove it himself, and if it fails to do so, and proceeds to abate and remove the same, it will be liable to the owner for such damages as he may sustain.

2. WORDS AND PHRASES—" *Wooden" and "Frame" Buildings.*— Under an ordinance prohibiting the erection of wooden or frame buildings, the words wooden and frame are interchangeable, one having the same meaning as the other. A wooden building is a frame building, and a frame building is a wooden building.

3. ORDINANCES—*Fire Limits—Notice to Remove Building.*—The notice required by an ordinance to authorize the removal of a building in a summary way, is not for the exclusive benefit of the owners of the property, but is a condition precedent, to be strictly performed by the city, before it or any of its officers are authorized to meddle with the building.

4. WAIVER—*General Doctrine of.*—A party should not be held to waive that which is necessary to constitute a right of action against him, unless it fairly appears from the evidence that he actually intended to waive it, or his conduct has been such as to estop him to deny that he did waive it.

Trespass, for destroying buildings, etc. Trial in the Circuit Court of Jackson County; the Hon. ALONZO K. VICKERS, Judge, presiding. Verdict of not guilty and judgment for defendant. Appeal by plaintiff. Heard in this court at the February term, 1898. Reversed and remanded. Opinion filed August 31, 1898.

## STATEMENT.

The fire limits of the city of Murphysboro are fixed and defined by Sec. 1, of Ch. 11, of the City Ordinances.

· Section II of the chapter is as follows :

" It shall be unlawful for any person, company, corporation or firm, to erect or build, or to commence the erection, within the fire limits of the city, of any wooden or frame building or structure, exceeding in size eight by ten feet . and ten feet in height. And it shall be deemed a violation of this section to erect or commence the erection of any frame building or structure or of any frame addition to any building or structure, within the fire limits, which in dimen-. sions shall be sufficient to exceed in area eighty square feet, or in capacity eight hundred cubic feet, notwithstanding that such building or structure or addition may, as to some of its dimensions, be less than is above specified."

Section VI of the chapter provides as follows : " Whenever the erection  *  *  *  of any building or structure shall be commenced within the fire limits of the city contrary to the provisions of sections two, three or four of this chapter, or of either of the same, the city marshal shall forthwith notify the person, company, corporation or firm commencing the same, to desist therefrom, and remove the portion if any thereof already erected;  *  *  *  and if such · person, company, corporation or firm shall persist in proceeding with the erection  *  *  *  of such structure or building for forty-eight hours after such notice, or shall willfully fail, neglect or refuse, for forty-eight hours, to comply with such notice, the city marshal shall proceed to remove such building or the portion thereof, if any, already constructed and all materials therefor as a nuisance, for which purpose he may and is hereby authorized to procure such assistance, and call to his aid such numbers. of persons as may be necessary."

In June, 1897, appellants erected within the fire limits of the city a building, sixteen by seventy feet, one story in height, on the south side of and adjoining a brick building already there. The building so erected was a wooden frame structure, the south side, ends and roof of which were covered with wooden sheathing, and the sheathing was covered with corrugated iron, the spaces between the studding being filled with loose brick. As the building was nearing completion, the mayor, marshal and aldermen of the city, assuming to act for the city, without giving plaintiffs notice to remove the building, tore it down, for which act appellants brought this suit in trespass against them, making the city also a defendant.

The defendants pleaded in justification the ordinances of the city above quoted; a trial by jury resulted in a verdict of not guilty; judgment having been entered on the verdict, plaintiffs appealed.

A. B. GARRETT and JAMES H. MARTIN, attorneys for appellants.

GEORGE WALTER and JOHN M. HERBERT, attorneys for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

The grounds relied upon by appellants for a reversal of the judgment, are the giving and refusing instructions. The plaintiffs asked the court to give the jury four instructions, all of which were refused and plaintiffs excepted. The first instruction is as follows:

First. "Before the city, or any one representing it, can legally tear down and remove a building within the fire limits of the city, it is the law that the city shall give to the owners of such building notice to remove it himself, and if the city fails to do this, and then proceeds to abate and tear the same down, it is liable to the owner for such damages as he has sustained, if any is shown from the evidence."

That this instruction is the law and should have been given is too evident to need elucidation.

The second instruction is as follows:

Second. "The court further instructs you that the plaintiffs had a right to show by evidence, if they can, the fact, if such appears to be a fact from the evidence, that the city has permitted similar buildings to be erected and constructed within the fire limits of Murphysboro, as the one alleged to have been torn down by defendants, for the purpose of showing the construction the city and its officers themselves place upon said ordinances as to what buildings it prohibited."

If the officers of the city had tacitly allowed that portion of the city included in the fire limits to be filled with frame buildings no better than tinder boxes, such fact would have thrown no light upon the true construction of its fire ordinance. When the ordinance was duly passed and published it became a law of the city, and the city officers had no more right to disobey the law or suspend it, enlarge or construe it away than any other person.

The instruction was properly refused.

The third instruction was as follows:

Third. "In this case the court instructs you that unless the building erected by the plaintiffs was a wooden building, then the city authorities had no right to tear it down, and your verdict should be for the plaintiffs, in such sum as the evidence shall show he has sustained, if any, by reason of tearing down such building."

The ordinance prohibits the erection of "any wooden or frame building." The words "wooden" and "frame" are interchangeable, one having the same meaning as the other. A wooden building is a frame building, and a frame building is a wooden building. The instruction substantially stated the law correctly, and the court erred in refusing it.

The fourth instruction is as follows:

Fourth. "The court further instructs you that the tearing down of a building within fire limits of a city is an extraordinary remedy provided by ordinances, and before a city or its officers shall be justified in pursuing such a remedy, they must show by the evidence that they have com-

plied strictly with the statute and ordinance under which they seek to justify."

This instruction is clearly the law, and it was error to refuse it. Louisville v. Webster, 108 Ill. 414.

The defendants asked and the court gave to the jury one instruction beginning as follows: "The court instructs you that the statutes of the State of Illinois give cities the right to pass ordinances fixing fire limits, and prohibiting the erection of wooden buildings within fire limits. You are instructed that the city of Murphysboro has passed the following ordinances with reference to fire limits." Then follows sections 1, 2, 3, 4, 5 and 6, of chapter 11 of the revised ordinances of the city of Murphysboro. The sections had already been given in evidence by the defendants against plaintiff's objection, and all of them that have any necessary connection with the law or facts of this case we have before quoted.

It is difficult to understand the purpose of giving the instruction, and since it could only bewilder the jury, it was error to give it.

The court of its own motion, gave to the jury the following instructions, viz.:

4. "One of the necessary steps to be taken by the defendants before the right to tear down and remove a building erected in violation of these ordinances, is to give the owner forty-eight hours to desist from work on such building and to remove such part, if any, as may have been erected, and the tearing away of such building without such notice would be wrongful, and make the parties so tearing it down, liable to the owner.

5. While the law requires such notice as the instruction just read described, still this is a provision of law for the exclusive benefit of the property owner, and he may waive his right to such notice expressly, or by his conduct.

6. If the jury find, from the evidence, that the plaintiffs had made up their minds to proceed with such building, regardless of all notices, and that the plaintiff who was in the active management of the erection of such building,

stated to the city marshal that he could bring on his notices, that he intended to proceed with the building, this is evidence tending to show a waiver of notice on the part of the plaintiffs.

7. If you find that the notice was waived by the plaintiffs you should treat the case the same as though a proper notice was given.

10. If the building was such as is prohibited by the ordinances, and was in the fire limits of the city, and the defendants tore the same down after the plaintiffs had waived notice, as explained in these instructions, then the defendants are not guilty and should be acquitted."

The notice required by law, to authorize the removal of the building in the summary way, was not for the exclusive benefit of the owners of the property, but it was a condition precedent, to be strictly performed by the city before it or any of its officers were authorized to meddle with the property.

A notice for an application for an injunction, and two notices to stop further work on the building, seem to have been issued by the city officials, but the latter were not dated, nor is there any return on either showing service. The last notice was issued by the marshal of the city, and he testified that at the time he served it on S. W. Ward they had some conversation, which he details as follows : ·

"I went and looked into the office and saw Mr. Ward behind the counter. I told him that I had another notice to serve on him, and he said 'All right.' I said, in forty-eight hours from now I will have to tear down the building, and he said, 'Yes, then is when the fun will begin.' I looked at the clock and marked on the notice 1:30 P. M."

Q. "What did he say to you with reference to bringing him any more notices?"

A. "Well, that was the notice before that. He said, if I had any more papers to bring them around; that he was going to put up the building."

S. W. Ward testified that he had no such conversation with the marshal.

This is the only evidence to support the claim that notice to remove the building was waived, and even if a waiver was a question of fact, to be found by the jury, the evidence is insufficient to sustain such a finding.

In Floyd v. Rathlege, 41 Ill. App. 370, the court said: "A party should not be held to waive that which is necessary to constitute a right of action against him, unless it fairly appears from the evidence that he actually intended to waive it, or his conduct has been such as to estop him to deny that he did waive it."

The evidence to show that appellant S. W. Ward waived notice to remove the building is very unsatisfactory, while there is no evidence whatever that appellant J. H. Ward did or said anything that tended to show a waiver.

Instruction No. 10 assumes that notice to remove the building had been waived by appellant, and except in cases where the facts assumed have not been controverted, such an instruction has uniformly been held to be erroneous by the Supreme Court.

It was error to give the court's instructions Nos. 5, 6, 7 and 10, and each of them.

For the errors in giving and refusing instructions the judgment is reversed and the cause remanded.